**EDMOND v. WALLER'S, Inc., et al.**

No. 6007.

Court of Appeal of Louisiana.    Second Circuit.

Nov. 3, 1939.

John A. Richardson, of Shreveport, for appellant.

Irion & Switzer, of Shreveport, for appellees.

HAMITER, Judge.

While engaged in the scope and course of his employment on September 7, 1938, as an employee of Waller's, Inc., Clarence Edmond was injured by the falling of a heavy air-conditioning machine against him. Immediately thereafter the employer sent him to Dr. H. W. Paul for medical attention. This physician found the existence of a complete left inguinal hernia, there being a protrusion through the external ring, and performed an operation for the purpose of repairing such condition.

Subsequently this proceeding was instituted by the employee against his employer and the latter's insurer. The petition, besides containing the essential allegations relative to the employment and the occurrence of the claimed accident, recites that "petitioner sustained a hernia of his left side and also what is known in medical parlance as a potential hernia of his right side or right groin." The performance of the aforementioned operation without complete relief being furnished thereby is also averred. Compensation as for total and permanent disability, based on a weekly wage of $7, is asked from both defendants.

In their joint answer, defendants admit the general employment of plaintiff by Waller's, Inc., and that his wages were $7 per week. However, all allegations relative to the occurrence of an accident with resulting injury and disability are denied.

There was judgment in plaintiff's favor and against the defendants in solido for compensation at the rate of $4.55 per week for a period of seven weeks, together with appropriate interest thereon, and for all costs of the suit. In connection with his decree, the trial judge furnished a well considered written opinion.

This appeal was prosecuted by plaintiff. He complains of the judgment in so far as it rejects his demands for compensation over and above the period of seven weeks, and also in so far as it "fails and omits to allow expert witness fees as costs in the sum of $25.00 each to Doctors S. W. Boyce, D. H. Alverson, C. H. Potts, and D. A. Huckabay."

According to the record the operation for the repair of the left inguinal hernia was performed at a hospital on September 9, 1938. After remaining in that institution for eight days, the employee went to his home where he was confined to bed for an additional period of eight days. About November 1, 1938, Dr. Paul, the attending physician, examined the patient and found that the operation had been entirely successful and declared him to be ready and able to return to work. It was for the intervening time that the seven weeks' compensation was allowed by the district court. With reference to this allowance, defense counsel have the following to say in their brief:

"While the defendants deny plaintiff's allegation of an accident, as well as his alleged disability, we wish to state at the outset that while it is still doubtful that plaintiff received a hernia on the left side while doing any work for the defendants in the scope and course of his employment, nevertheless we concede that there is sufficient evidence in the record to justify the court in so holding and admit that the judgment of the District Court, granting plaintiff seven weeks' compensation, is correct."

It is urged by plaintiff, however, that the hernia in his left groin was disabling for a longer period than the mentioned seven weeks. The evidence in our opinion does not support this contention. On the contrary, his own medical experts testified that the operation completely remedied such ailment.

The demands for compensation as for total and permanent disability are predicated primarily on the assertion of plaintiff that a potential hernia in his right groin resulted from the accident. Defendants offer strenuous resistance to this claim, and with respect thereto furnish the testimony of Doctors Paul and Addison. The former, who is assistant coroner of Caddo Parish, Louisiana, states that when making his original examination of plaintiff, he inspected both groins and found no potential hernia or other injury to the right side. This inspection included the insertion of the finger into the external and

inguinal rings. The patient complained of pain only in the left groin. If a potential right hernia had existed he would have repaired it when operating on the left side. The examination made about the first of November, 1938, when the patient was discharged, was similar to the original one and disclosed no defects.

The other defense physician saw plaintiff on October 31, 1938, and found a scar on his left side resulting from the successful hernia operation performed by Dr. Paul. In the right groin he noticed a slightly enlarged external ring, but there was no weakness of the inguinal ring muscles in that region and no bulging. When asked if that condition could have been caused by an accident such as the employee asserted, he replied in the negative. It was his opinion that the man was then able to perform ordinary work.

The four medical experts testifying in plaintiff's behalf observed him for the first time in the early part of December, 1938. The substance of their testimony is that the employee did not have a complete hernia on the right side but that his condition was such that hard work in the future would probably cause the occurrence there of one. The ailment was diagnosed as a potential hernia. Most of them, however, were of the opinion that he suffered no pain and was then able to do manual labor. They further testified that the condition noticed could have been either congenital or traumatically caused.

In his written opinion the trial judge said:

"The most the Court can gather is that the condition complained of might be congenital; might have been caused by the accident, or might have happened the day before the examinations in December.

"Traumatic hernia causes a tearing and immediate pain. Plaintiff felt no pain until three weeks after the accident.

\* \* \*

"The most that plaintiff has established in this case is the possibility that the potential hernia was caused by the accident, though even this is denied by defendants' experts. The testimony leaves us with the impression that even the greater probability is that it was congenital. This does not meet the degree of proof required of a plaintiff in cases of this character."

The observations just quoted are fully supported by the evidence in the record and the law of this state, and, we think, the granting of compensation for a seven weeks' period and the ordering of payment of costs by defendant were correct.

Appellant's next complaint is that his four medical experts were not allowed fees of $25 each. In considering this it must be noticed that defendants denied plaintiff's allegations of the occurrence of an accident with resulting injury and disability, and that it was therefore necessary for him to produce expert witnesses to prove his claimed injured condition.

The record discloses that the judgment awarding seven weeks' compensation was rendered February 4, 1939. Three days later, or on February 7, 1939, a motion for a new trial or rehearing was filed by plaintiff. This was overruled on February 18, 1939. On the last named date defense counsel submitted and had signed by the court a judgment in accordance with the ruling of February 4, 1939, this being done without objection from plaintiff's attorney. No mention of expert fees was made in the signed judgment. On February 23, 1939, plaintiff moved to fix the fees of his summoned physicians at $25 each and to tax them as costs of the suit. This motion was resisted by defendants on the following grounds:

1. All of plaintiff's doctors testified solely regarding the potential hernia on the right side, while the court found that there was no liability therefor.

2. The motion came too late.

Obviously, the first stated ground is without merit. As before mentioned, plaintiff was compelled to produce medical testimony to prove his allegations regarding the existence of hernias in both groins after denial thereof was made by defendants. It so happened that on the trial of the case no serious contest was made as to the hernia on the left side; but plaintiff could not have foreseen this.

In support of the second ground, there is cited the following provision of subsection 4 of section 18 of the Louisiana Employer's Liability Act, being Act No. 20 of 1914, as amended by Act No. 85 of 1926, viz.: "The fees of medical witnesses shall be reasonable and are not to be allowed unless fixed in the judgment." It is pointed out that the judgment in the in-

stant case is silent as to medical expert fees, and counsel argue that they must be disallowed in view of the quoted clause.

It was because of such statutory provision that the district judge denied plaintiff's motion. With reference thereto, and as the written opinion in the record discloses, he stated:

"Opposing counsel cite no decision of the appellate courts construing the provision. An examination of the record in the case of Yost v. Zagst, No. 68,721 on the docket of this court, discloses that a motion to fix expert fees was filed after judgment signed and overruled by the then serving Judge T. F. Bell.

"While this is a strict construction, the Act confines liberality to technical rules dehors the act. It being the custom of this court for one judge to follow the rulings of the others, unless plainly contrary to the jurisprudence, this decision will be controlling in the case unless it conflicts with the finding of an appellate court.

"We therefore are of the opinion that the ruling of the Court in the Yost case is not contrary to any opinion of an appellate court which discusses the pertinent section of the Act, and the demands of plaintiff in the rule should be and hereby are rejected.

"A judgment in a compensation case differs from the usual final judgment in that in proper cases it is subject to change in the trial court. While we do not so hold, it is possible that if the matter was presented in the form of a request for an amendment of the judgment a different result might follow, as we think it clear that the fees are otherwise allowable."

Subsequently, plaintiff, by written motion, prayed for an amendment or correction of the judgment so as to allow the expert fees. This motion was also overruled, the court stating in an opinion filed on March 18, 1939, that:

"For the reasons given in the opinion rendered by the Court of Appeals in the case of Jefferson v. Laure N. Truck Line, 181 So. 821, the motion to amend the judgment herein is overruled."

The decision in Jefferson v. Laure N. Truck Line et al., cited and followed by the trial judge, was one rendered by the Court of Appeal, Orleans Circuit, 181 So. 821. Later the Supreme Court considered the case on a writ of certiorari and, by a divided court, affirmed the ruling of the Court of Appeal. 192 La. 29, 187 So. 44. The plaintiff in that controversy sued his employers and obtained a compensation award of $156.00. The judgment, which was silent with reference to expert witness fees, was paid in full shortly after its signing, and without any appeal therefrom having been taken. Nearly five months after the judgment had become final, and some time after it was paid, a physician who had testified as a medical expert witness during the trial of the case, proceeded by rule against the defendants to collect his expert witness fee. In response to the rule defendants pleaded that under the provisions of subsection 4 of section 18 of the Employer's Liability Act, which we have above quoted, the fee could not be allowed because it had not been fixed in the judgment. Plaintiff in rule was denied recovery, the Supreme Court holding, as the majority opinion discloses, that the mentioned statutory provision barred his claim.

The decision in the Jefferson case and the discussed statutory provision, do not, we think, prevent our granting the relief which plaintiff seeks and to which he is equitably entitled. The factual situations in the named controversy and the instant one are not identical. There the claim for expert fees was made by one not a party to the suit and long after the judgment had been acquiesced in by the litigants and paid. Here a litigant in the cause regularly and timely perfected an appeal from the judgment and is now asking its revision to the extent of allowing the claimed fees.

It is true that such statutory clause states that the fees of medical witnesses are not to be allowed unless fixed in the judgment; and the Supreme Court, in its majority opinion, has said that a definitive judgment on the merits, such as we are now dealing with, is the kind therein referred to. It is likewise true, however, that a party to a suit has recourse to a superior tribunal, through the method of appeal, in order to correct or revise a definitive judgment. Code of Practice, articles 556, 564 and 565. Of course, the appeal must be perfected within the time and in the manner directed by law. In the case under consideration, as before stated, there has been a compliance with all requisites of the law respecting the matter of appeal.

As shown above, the trial judge stated in his written opinion that he thought the

fees claimed by plaintiff were allowable, except for the technical reasons discussed. It will therefore be unnecessary to remand the cause to permit further consideration of them.

For the reasons above given, the judgment of the district court is amended to the extent of allowing and fixing the expert witness fees of Doctors S. W. Boyce, D. H. Alverson, C. H. Potts, and D. A. Huckabay in the sum of $25 each, and taxing such fees as costs of the case; and as thus amended, the said judgment is affirmed.